IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 2, 2003

## STATE OF TENNESSEE v. JEROME COMER

**Direct Appeal from the Circuit Court for Franklin County**
**No. 14138   Buddy D. Perry, Judge**

**No. M2003-00733-CCA-R3-CD - Filed December 30, 2003**

A Franklin County jury convicted the Defendant of one count of Sale of a Schedule II Controlled Substance, cocaine, and one count of Delivery of a Controlled Substance, also cocaine. The trial court merged the convictions and sentenced the Defendant to eight years in prison. The Defendant appeals, contending: (1) there was insufficient evidence to support his convictions; and (2) that the trial court imposed an excessive sentence. After reviewing the record, we conclude that sufficient evidence was presented to support the Defendant's convictions and the trial court did not err in sentencing the Defendant. Accordingly, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

David O. McGovern, Jasper, Tennessee, for the appellant, Jerome Comer.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Kim R. Helper, Assistant Attorney General; J. Michael Taylor, District Attorney General; and Steve Blount, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts at Trial**

The Defendant, Jerome Comer, was indicted for one count of Sale of a Schedule II Controlled Substance and one count of Delivery of a Controlled Substance, both Class C felonies. See Tenn. Code Ann. § 39-17-417 (1997).[1]  A Franklin County jury found the Defendant guilty of

---

[1]The Defendant was originally indicted for two counts of Sale of a Schedule II Controlled Substance and two counts of Delivery of a Controlled Substance. The trial court granted a severance of two counts, ordering that one count of Sale of a Schedule II Controlled Substance and one count of Delivery of a Controlled Substances be tried separately from the second counts for the same offenses.

both offenses. The trial court merged the conviction for Sale of a Schedule II Controlled Substance with the conviction for Delivery of a Controlled Substance and sentenced the Defendant, as a multiple offender, to eight years in prison.

The following evidence was presented at the Defendant's trial in the Franklin County Circuit Court. Michael Buckner, a narcotics detective with the Decherd Police Department, testified that he was involved in an operation designed to arrest people selling illegal drugs. As part of this operation, the detective and his team placed a concealed recording device on an informant, Henry Parrish, who would attempt to purchase illegal drugs at a location designated by the team. The detective would give Parrish a set amount of money, and Parrish would go to the designated location and attempt to purchase illegal drugs. If Parrish successfully bought illegal drugs, he would return with the evidence. After Parrish would return, Detective Buckner would retrieve the tape-recording and the illegal drugs and give the evidence a log number. The detective would also obtain a description of the seller from Parrish. Detective Buckner would use the description, along with the identification made by another officer witnessing the buy, to identify and arrest the seller.

On May 25, 2001, the detective testified that he met with Parrish at around 4:26 p.m. and told Parrish to attempt to purchase drugs from 210 Wilkerson Street. The detective testified that he fitted Parrish with a concealed recorder, and Parrish left for the address while the detective waited in a motel. Parrish returned shortly thereafter with a substance that Detective Buckner believed was crack cocaine and the tape-recording. When Parrish returned, he provided the detective with a description of the seller. Detective Buckner testified that he asked Jimmy Daniel, an officer with the Decherd Police Department, to go to 210 Wilkerson Street and to identify everyone who was present at the address shortly after the drug buy. The detective testified that after the drug buy he presented Parrish with photographs and asked him to identify the drug seller. As a result of this investigation, the Defendant was arrested.

On cross-examination, the detective admitted that he did not remember which day of the week May 25, 2001, fell on and that he did not remember what the weather was that day. Detective Buckner stated that Parrish was compensated based upon the number of drug buys he successfully made. The detective conceded that the tape-recording of voices, other than Parrish's, were "staticky." Detective Buckner testified that they had trouble locating the Defendant, so the Defendant was not arrested until November 24, 2001.

Henry Parrish testified that, in May of 2001, he was buying drugs for the Decherd Police Department and that he was paid $100.00 per drug buy. Parrish testified that he had done this kind of work intermittently for the last fifteen to twenty years for multiple police departments. Parrish stated that, on May 25, 2001, he met Detective Buckner at Parrish's motel room and the detective told him they were going to attempt a purchase at 210 Wilkerson Street. Parrish stated that he was familiar with that address and opined that it was a location that was likely to have drug activity. Parrish testified that prior to going to attempt the buy he reviewed multiple photographs of potential suspects "many times."

Parrish identified the Defendant as the man who sold him the crack cocaine on May 25, 2001, at 210 Wilkerson Street. He stated that, at the time of the drug buy, he did not know the Defendant's name. Parrish stated that he tape-recorded his conversation with the Defendant and identified the voice on the tape-recording, which was played at trial, as the Defendant's voice. Parrish stated that there were two men present at the time of the buy, "a big man and a little man," and that the Defendant was the one he referred to as the "little man." Parrish testified that the Defendant handed Parrish the drugs, and Parrish handed the Defendant the money. Parrish stated that he saw the Defendant get the drugs from the "big man." He testified that he and the detective were never able to identify the "big man." Parrish testified that, after he purchased the drugs, the Defendant asked him if he wanted to buy more, and Parrish replied, "no, not right now."

On cross-examination, Parrish admitted that he had been convicted of a felony but stated that the conviction was over twenty years ago. Parrish stated that he could not recall on what day of the week May 25, 2001 fell, but he stated that it was a clear day and that it was light outside at the time of the drug buy. Parrish stated that he could never identify the "big man" and that, if he had been able to, he would not have been compensated any more because he did not actually make a purchase from that man. Parrish stated that, when he would make a successful purchase, he would be paid whether or not he could identify the seller.

The parties stipulated that:

> Chris Fann, who is a Decherd Police Officer, . . . [is] the evidence custodian in this case. He would testify that he received the [evidence] from Officer Buckner, that he secured it and then sent it to the Tennessee Bureau of Investigation. After that he received back from the Tennessee Bureau of Investigation a lab report and he personally went and received and retrieved the evidence back to the City of Decherd and it has been located in the evidence locker in the City of Decherd since that time . . . .

The parties also stipulated that Special Agent Adam Gray, a forensic scientist with the Tennessee Bureau of Investigation, would testify that the evidence was tested and that the tests revealed that the evidence was 0.2 grams of crack cocaine.

Jimmy Daniel, an officer with the Decherd Police Department, testified that, on May 25, 2001, he was working with Detective Buckner, who radioed him and asked him to confirm the identity of a man from whom Parrish had just purchased illegal drugs. Officer Daniel testified that he was familiar with the area and familiar with the Defendant prior to May 25th and that, when he went to 210 Wilkerson Street, pursuant to Detective Buckner's request, the Defendant was there. On cross-examination, the officer testified that the Defendant did not run when the officer passed him and that there were several people in the area that generally fit the Defendant's description. The officer also testified that he could have activated the camera in his car and, if he had, he might have been able to obtain a video of the Defendant shortly after the drug buy. The Defendant did not present any evidence at trial.

## II. Sentencing Hearing

At the sentencing hearing, the Defendant testified that he stopped attending school after he completed the ninth grade. The Defendant stated that, when he quit school, he was living with his mother and worked two jobs, one detailing cars and the other for a trash company. The Defendant stated that, during that time, he used drugs, and he has never had any counseling or rehabilitation training for his drug use. The Defendant testified that he attended "boot camp" and that he was not back in prison until four years later. The Defendant testified that his plans were to get a job and "stay out of trouble." The Defendant stated that he did not use a weapon during the commission of this crime.

On cross-examination, the Defendant stated that he had three previous felony convictions. In April of 1995, the Defendant was convicted of three drug-related felonies in Franklin County, and, while in Community Corrections for those offenses, the Defendant was arrested on drug-related charges in Davidson County. The Defendant admitted that, thereafter, Franklin County revoked his Community Corrections and the Defendant then went to "boot camp." The Defendant testified that, shortly after completing "boot camp," he got out of jail and was on probation. The Defendant stated that he violated his probation and went back on Community Corrections. He testified that he then violated his Community Corrections and went to prison. All of the Defendant's violations were a result of selling or facilitating the sale of cocaine. The Defendant testified that he was still on probation for these felonies when he committed the current offense.

After arguments by the parties, the trial court noted that the sentencing range was six to ten years. The trial court found that three enhancement factors applied and that no mitigating factors applied. The trial court merged the Defendant's conviction for Delivery of a Controlled Substance with the Defendant's conviction for Sale of a Schedule II Controlled Substance and then sentenced the Defendant, as a multiple offender, to eight years in prison.

## III. Analysis

The Defendant appeals, contending that the evidence is insufficient to support his convictions and that his sentence is excessive.

### A. Sufficiency of the Evidence

The Defendant contends that the evidence presented at trial was insufficient to support his convictions because "the State did not present sufficient evidence to prove that [the Defendant] was the individual who actually sold drugs, if in fact drugs were sold." When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). This rule

-4-

applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

This Court previously held that:

> The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made. See State v. Strickland, 885 S.W.2d 85, 87-88 (Tenn. Crim. App.1993). Inconsistency, inaccuracy and omissions in the description of a defendant by a witness who is otherwise able to positively identify the defendant are questions for the jury to consider in determining the weight to be given the testimony. See generally State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Further, although inconsistencies or inaccuracies may make the witness a less credible witness, the jury's verdict will not be disturbed unless the inaccuracies or inconsistencies are so improbable or unsatisfactory as to create a reasonable doubt of the appellant's guilt.

State v. Radley, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999).

The Defendant asserts that there was insufficient evidence presented to prove that the Defendant was the man who sold Parrish the crack cocaine. The Defendant attacks Parrish's credibility because Parrish is a "convicted felon." We find the Defendant's argument unpersuasive. At trial, the proof showed that Detective Buckner and Parrish reviewed photographs prior to the undercover drug buy. Parrish then went, with a tape-recording device, to purchase illegal drugs from 210 Wilkerson Street. Parrish identified the Defendant as the man who sold him the illegal drugs. Parrish returned with the evidence to Detective Buckner, who tagged and logged the evidence. The evidence was tested and found to be cocaine in the amount of 0.2 grams. Officer Daniel drove past the address shortly after the drug buy and identified the Defendant, with whom he was familiar, as being present at the address. Questions of credibility are for the jury to decide, and the jury found

Parrish credible. The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made. Accordingly, we find that the evidence presented was sufficient to support the Defendant's convictions.

### B. Sentencing

The Defendant next asserts that the trial court erred when it sentenced him because it failed to consider that the Defendant's conduct neither caused nor threatened serious bodily injury or death. When a defendant challenges the length and manner of service of a sentence, it is the duty of this court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001); State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. § 40-35-210 (1997 & Supp. 2002); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (1997), Sentencing Commission Cmts.

At the sentencing hearing, the trial court noted that the sentencing range was six to ten years. The State asserted that three enhancement factors applied: that the Defendant had a previous history of criminal convictions, see Tennessee Code Annotated section 40-35-114(1) (1997)[2]; that the Defendant had a previous history of unwillingness to comply with the conditions of a sentence involving release into the community, see Tennessee Code Annotated section 40-35-114(8) (1997); and that the defendant committed a felony on release status, see Tennessee Code Annotated section 40-35-114(13). The State requested that the Defendant be sentenced to ten years in light of these enhancement factors. The trial court agreed that all three enhancement factors were applicable and found that no mitigating factors applied. The trial court stated:

---

[2]We note that, beginning July 4, 2002, "the 2002 amendment [to Tennessee Code Annotated section 40-35-114] added present [enhancement factor] (1) and redesignated former (1) through (22) as present (2) through (23), respectively." Tenn. Code Ann. § 40-35-114, Amendments (Supp. 2002). Thus, enhancement factor (1) becomes enhancement factor (2), enhancement factor (7) becomes enhancement factor (8), etc. For the purposes of this opinion, we will use the old numbering, since it was effective at the time of the Defendant's sentencing.

I think probably, quite honestly, when the attorney general . . . argues that this should be a 10 year sentence he's absolutely right. I'm not going to impose a 10 year sentence in this case. At some point you're going to get out and at some point we hope you come out something different than what you went in. But I can't impose [the] minimum sentence either. If I do that I'm ignoring the obvious record and that's not the way I'm suppose[d] to make these decisions. I going to set the sentence at eight years. I think [that I] have no choice, based upon the criminal history that's in this case . . . . I find, for the record, by a preponderance of the evidence, that you have an extensive criminal activity and therefore, I'm going to make it an eight year sentence . . . .

The Defendant does not contest the trial court's application of the three enhancement factors, but he only argues that it erred by not applying one mitigating factor: that the Defendant's conduct neither caused nor threatened serious bodily injury or death, pursuant to Tennessee Code Annotated section 40-35-113(1) (1997). We hold that the trial court followed the statutory sentencing procedure and that its judgment is, therefore, afforded a presumption of correctness. We also hold that the evidence does not preponderate against the trial court's finding that three enhancing factors applied. The Defendant testified, and the pre-sentence report confirmed, that the Defendant was previously convicted of three felonies related to the sale of cocaine in addition to other misdemeanor offenses. Such past criminal behavior is adequate to support the enhancement factor related to previous criminal conduct. The Defendant also testified, and the pre-sentence report also confirmed, that he was previously sentenced to Community Corrections and that he violated his sentence and the Community Corrections was revoked. This provides ample support for the trial court's application of enhancement factor (8). The evidence also does not preponderate against the trial court's finding that enhancement factor (13) applied. The Defendant testified, and the pre-sentence report confirmed, that the Defendant was on probation for a felony conviction until 2005. Accordingly, we conclude that the trial court did not err when it applied these three enhancement factors.

Having so decided, we now address the Defendant's contention that the trial court erred by not considering mitigating factor (1), that the Defendant's criminal conduct neither caused nor threatened serious bodily injury. Tenn. Code Ann. § 40-35-113(1). We conclude that the Defendant's argument is without merit. This Court has stated that:

Inherent within the trafficking and distribution of drugs is the potential for serious bodily injury. Although we recognize that not all drug deals involve violence, we do, however, recognize that the very nature of the act makes the potential for serious bodily injury ever present. Accordingly, we find that the sale of cocaine is not so sufficiently free from all danger such that it can be used to mitigate a seller's sentence. State v. Vanderford, 980 S.W.2d 390, 407 (Tenn. Crim. App. 1997); see also State v. Keel, 882 S.W.2d 410, 422 (Tenn. Crim. App. 1994).

State v. Holston, 94 S.W.3d 507, 512 (Tenn. Crim. App. 2002). Therefore, we conclude that the trial

court did not err by not applying mitigating factor (1) to reduce the Defendant's sentence. Even if this mitigating factor were applicable, the Defendant's sentence of eight years would still be appropriate in light of the three applicable enhancement factors.

When there are enhancement factors and no mitigating factors, there is no presumptive sentence and the court may sentence above the minimum in the range. Tenn. Code Ann. § 40-35-210(d) (1997 & Supp. 2001). Of particular weight in this case are the Defendant's prior drug convictions. Under these circumstances, the trial court was clearly justified in imposing a sentence of eight years, two years above the minimum, for the sale of cocaine.

## IV. Conclusion

In accordance with the foregoing, we conclude that the evidence is sufficient to support the Defendant's convictions and that the trial court committed no reversible error in sentencing the Defendant. Therefore, the judgments of the trial court are AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE